# FEDERAL RESERVE BANK *of* NEW YORK

33 LIBERTY STREET, NEW YORK, NY 10045-0001

**Michele Kalstein**
SENIOR COUNSEL

October 16, 2018

VIA ECF
The Hon. Andrew L. Carter, Jr.
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:  <u>TNB USA, Inc. v. Federal Reserve Bank of New York</u>, No. 18 Civ. 7978 (ALC)

Dear Judge Carter:

I represent Defendant Federal Reserve Bank of New York (the "New York Fed") in the above-referenced action.  The New York Fed is part of the nation's central bank, which is made up of the Board of Governors of the Federal Reserve System (the "Board of Governors"), the Federal Open Market Committee, and 12 Federal Reserve Banks.

Plaintiff TNB USA, Inc. ("TNB") seeks a declaration that the Federal Reserve Act, 12 U.S.C. §§ 221 *et seq*., (the "FRA") requires the New York Fed to open an account for it (known as a master account) and an injunction compelling the New York Fed to do so.  TNB makes these requests even though (i) TNB's account application is still under review; (ii) the opening of master accounts is discretionary under the FRA; and (iii) TNB's application raises significant policy concerns that conflict with the Federal Reserve's statutorily mandated policy responsibilities.  Compl. ¶¶ 10, 72, 73, 74, 75, 77, 81, 82, 89.

Pursuant to Your Honor's Individual Rule 2(A), I write to request a pre-motion conference on a proposed motion to dismiss TNB's complaint.  Dismissal is appropriate under Federal Rule 12(b)(1) on ripeness and standing grounds because no decision has been reached by the New York Fed on TNB's account application.  TNB thus seeks an advisory opinion about a contingent future event that may never occur.  Dismissal is also warranted under Federal Rule 12(b)(6) because TNB asks the Court to adopt an incorrect interpretation of the FRA.

**I.    Case Background:**  If granted a master account at the New York Fed, TNB plans solely to use funds from large institutional investors to arbitrage the Federal Reserve's rate of Interest on Excess Reserves ("IOER") by passing on to its investors the bulk of the interest earned, after taking a cut for itself.  *Id.* ¶¶ 39, 43*,* 44, 47.  TNB applied for such an account on April 27, 2018.  Compl. ¶ 78.  The application remains under review because, as TNB acknowledges, TNB's novel business model raises significant policy concerns.  Compl. ¶¶ 10, 72, 73, 74, 75, 77, 79, 81.  These policy concerns stem in part from the FRA's

FEDERAL RESERVE BANK *of* NEW YORK

2

monetary policy mandate, which requires the Federal Reserve to monitor and influence the Nation's money supply "so as to promote effectively the goals of maximum employment, stable prices, and moderate long-term interest rates."  12 U.S.C. § 225a.  See also 12 U.S.C. § 263; Compl. ¶¶ 82-91.

**II.     The Court Lacks Jurisdiction Because TNB Has No Standing to Maintain This Unripe Action:**  As a threshold matter, dismissal is appropriate here under Federal Rule 12(b)(1) because TNB's application for a master account is *still under consideration.*  Compl. ¶¶ 11, 79.  TNB thus seeks an advisory opinion about a contingent future event that may never occur, and accordingly lacks standing to bring its unripe claim.  See National Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 688-89 (2d Cir. 2013) (alleged "speculative [and] hypothetical" harm insufficient to establish standing); Dow Jones & Co., Inc. v. Harrods, Ltd., 237 F. Supp. 2d 394, 407 (S.D.N.Y. 2002) (declaratory action not ripe for adjudication where "the feared legal consequence remains a mere possibility" or a "contingency that may or may not come to pass").

**III.    The Complaint Fails to State a Claim as a Matter of Law:**  TNB's complaint is also subject to dismissal because it rests on a legally incorrect interpretation of the FRA.  TNB asks the Court to hold that Section 11A of the FRA – a provision directed at the Board of Governors, not the Federal Reserve Banks – requires the New York Fed to open a master account for it.  However, TNB ignores that Section 13 of the FRA expressly gives Federal Reserve Banks discretion over whether to accept deposits from financial institutions, and thus necessarily gives Reserve Banks discretion over whether to open master accounts for those institutions.  12 U.S.C. § 342 ("Any Federal reserve bank *may* receive from any . . . depository institution[] . . . deposits of [assets]") (emphasis added).

Section 11A states only that the Board of Governors must adopt pricing principles for Federal Reserve Bank services that specify, among other things, that such services be priced for nonmember depository institutions at the same fee schedule applicable to member depository institutions.  12 U.S.C. § 248a(a), (c).  Section 11A says nothing about master accounts, and the opening of a master account is not a bank service subject to Section 11A.  See 12 U.S.C. § 248a(b) (listing covered services).  Moreover, Section 11A on its face does not require that bank services be provided to "*all*" nonmember depository institutions, notwithstanding TNB's improper attempt to have the Court read that word into the provision.  See U.S. v. Sabhnani, 599 F.3d 215, 245 (2d Cir. 2009) ("We decline [defendant's] invitation to read words into the statute that are not there."); Morgan v. U.S., No. CV 84–4664 (RR), 1991 WL 353371, at *3 (E.D.N.Y. June 30, 1991) ("It is, of course, not this court's function to read words into or out of a statute.").

Even if Section 11A applied to the opening of master accounts – and it does not – the complaint would still be subject to dismissal because interpreting Section 11A to mandate the opening of a master account for TNB would conflict with the Federal Reserve's ability to effectively carry out its statutory mandates under the FRA.  TNB itself states that the Federal Reserve has expressed "policy concerns" about TNB's business model, which could interfere with the Federal Reserve's ability to fulfill its statutorily mandated policy goals.  Compl. ¶¶ 10, 72, 73, 74, 75, 77, 79, 81.  Indeed, TNB acknowledges that the "influence" of the IOER rate that it seeks to arbitrage "on the broader U.S. and global economy is profound."  Compl. ¶ 85.  Despite having heard these policy concerns directly from the Federal Reserve, TNB omits them

**FEDERAL RESERVE BANK *of* NEW YORK**

3

from the complaint and self-servingly posits that its proposed business model is unlikely to affect monetary policy.[1]  However, TNB acknowledges that the actual impact of its proposed business is unknown.  Compl. ¶¶ 82, 99.  TNB even goes so far as to suggest that it should be allowed to compete with and "serve an almost equivalent economic function" as the Federal Reserve's important monetary policy tools.  Compl. ¶¶ 109, 114, 116.  The Court should reject TNB's improper attempt to have the Court to substitute its judgment for the judgment of the agency charged with implementing the FRA.  See U.S. v. Mead Corp., 533 U.S. 218, 220 (2001) (Agency's interpretation merits deference given the "specialized experience and broader investigations and information" available to the agency and given the value of uniformity in its administrative and judicial understandings of what a national law requires).

TNB's proposed reading of Section 11A is incorrect as a matter of law and stands in direct conflict with the provisions of the FRA that require the Federal Reserve to formulate and implement monetary policy and to promote financial stability.  See, e.g., 12 U.S.C. §§ 225a, 263, 5325, 5365.  There is nothing in the FRA indicating that the New York Fed must provide TNB a master account under any circumstances, let alone where so doing would interfere with the Federal Reserve's ability to carry out its important statutory mandates.  "Absent a clear indication that Congress intended such a sweeping effect," a court should not "infer such a purpose nor … interpret a statute to effect that result."  Stafford v. Briggs, 444 U.S. 527, 545 (1980).

For the foregoing reasons, the New York Fed respectfully requests a pre-motion conference on its proposed motion to dismiss TNB's complaint.

          Respectfully submitted,

          /s/ Michele Kalstein
          Michele Kalstein

cc:    Counsel of Record (via ECF)

---

[1] Notably, market commentators recognize that entities like TNB could significantly interfere with the implementation of critical monetary policy and financial stability goals.  S. Cecchetti & K. Schoenholtz, *Pitfalls of a Reserves-only Narrow Bank*, Money & Banking (Sept. 24, 2018), https://www.moneyandbanking.com/commentary/2018924/pitfalls-of-a-reserves-only-narrow-bank ("we worry that [entities like TNB] would shrink the supply of credit to the private sector and aggravate financial instability during periods of banking stress."); G. Selgin, *The Skinny on the Narrow Bank*, Alt-M (Sept. 10, 2018), https://www.alt-m.org/2018/09/10/the-skinny-on-the-narrow-bank ("were it to gain a charter, TNB could cause the Fed's present operating system, or a substantial part of it, to unravel").