DEWEY PEGNO & KRAMARSKY LLP

777 THIRD AVENUE  NEW YORK, NEW YORK  10017

PHONE: (212) 943-9000  FACSIMILE: (212) 943-4325

WWW.DPKLAW.COM

October 19, 2018

**BY ECF**

Hon. Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *TNB USA Inc. v. Fed. Reserve Bank N.Y.*, **No. 18 Civ. 7978-ALC**

Dear Judge Carter:

      We represent Plaintiff TNB USA Inc. ("TNB") and write in response to Defendant Federal Reserve Bank of New York's ("FRBNY") letter requesting a pre-motion conference on its proposed motion to dismiss. (*See* Letter Motion (Oct. 16, 2018) ("Letter"), ECF No. 14.) TNB does not oppose the request for a conference. However, FRBNY's efforts to justify its discriminatory treatment of TNB are meritless: TNB has a clear legal right to open a Master Account under the governing statutory framework and applicable case law; and this dispute—which has been ongoing for more than a year as FRBNY tries, in the words of one prominent commentator, to "slow walk [TNB] to regulatory death"[1]—is plainly ripe for judicial review.

**Factual Background**

      As explained in the Complaint,[2] TNB was founded in 2016 by persons with extensive experience in financial services. TNB's business plan is to provide ultra-safe depository services for institutional money market investors by placing all assets with FRBNY and earning interest at the "interest on excess reserves" ("IOER") rate—as any bank with a Master Account already may do. In this way, TNB hopes to provide its customers (and individual investors in those funds) with higher rates of interest than are currently available to them for safe, liquid deposits.

      In July 2016, TNB began the process to obtain a charter from the Connecticut Department of Banking ("CTDOB"). After a rigorous year-long review of its operations and business plan, TNB received a temporary Certificate of Authority ("CoA"). CTDOB is prepared to give TNB a permanent CoA, and TNB has had discussions with potential depositors. To proceed, however, TNB needs a Master Account at FRBNY. Securing one is typically

---

[1] John H. Cochrane, Rose-Marie & Jack Anderson Senior Fellow, Hoover Ins., Stanford Univ., *Fed Nixes Narrow Bank* (Sept. 5, 2018), https://johnhcochrane.blogspot.com/2018/09/fed-nixes-narrow-bank.html.
[2] Complaint (Aug. 31, 2018) ("Compl."), ECF No. 1.

- 1 -

ministerial: for example, the application is a one-page form, which states that processing "may take 5-7 business days."

In August 2017, TNB began the process to open a Master Account with FRBNY. FRBNY reviewed the matter for months before telling TNB, in late 2017, that its request would be approved—only to call back later and inform TNB that the Board of Governors of the Federal Reserve System in Washington, D.C. (the "Board") had "policy concerns" about TNB. Though TNB need not have done so, given its statutory right to a Master Account, TNB spent several months explaining to the Board and FRBNY why any such concerns were unfounded. Nevertheless, FRNBY has persistently refused to open a Master Account for TNB, and neither FRBNY (nor the Board) has offered a reasoned justification for its unprecedented refusal to permit a duly chartered state bank to operate.

### **TNB Has a Legal Right to a Master Account**

*First*, the governing statutes command that TNB receive a Master Account. In 1980, the Federal Reserve Act ("FRA") was amended by the Depository Institutions Deregulation and Monetary Control Act. Notably, those amendments were passed in part to prevent the Federal Reserve banks from discriminating against smaller financial institutions in favor of large, too-big-to-fail banks. For that reason, the FRA peremptorily states that "***All Federal Reserve bank services*** covered by the fee schedule ***shall be available*** to nonmember depository institutions". 12 U.S.C. § 248a(c)(2) (emphasis added). A Master Account is necessarily one of those services; without one a depository institution like TNB[3] cannot access ***any*** Federal Reserve services. The FRA's principle of equal access has been consistently recognized by the Board[4] and FRBNY.[5]

FRBNY's litigation position—that Section 13 of the FRA (quoted with revealing alterations) gives FRBNY discretion to deny Master Accounts (*see* Letter at 2)—has been squarely rejected by Judge Bacharach of the Tenth Circuit in a recent opinion that FRBNY fails to cite or address. *See Fourth Corner Credit Union v. Fed. Reserve Bank Kan. City*, 861 F.3d 1052 (10th Cir. 2017).[6] Judge Bacharach concluded that the FRA "unambiguously entitle[s] all nonmember depository institutions to a master account," and that FRBNY's interpretation "flies

---

[3] Depository institutions include any state bank "engaged in the business of receiving deposits other than trust funds," as TNB is prepared and authorized to do. 12 U.S.C. § 461(b)(1)(A)(i) (incorporating *id.* § 1815(a)(1)).

[4] *E.g.*, Bd. Governors Fed. Reserve Sys., Policies: The Federal Reserve in the Payments System (1990) ("Federal Reserve payment services are available to ***all depository institutions***") (emphasis added), *available at* http://www.federalreserve.gov/paymentsystems/pfs_frpaysys.htm.

[5] *E.g.*, Fed. Reserve Bank N.Y., Annual Report: 1980, at 35 (1981) ("The Monetary Control Act will have a significant effect on this and other Reserve Banks' services. . . . Beginning in 1981, these services will be available equally to ***all depository institutions***".) (emphasis added), *available at* https://fraser.stlouisfed.org/files/docs/historical/frbny/1980_frb_newyork.pdf.

[6] At issue was a Master Account request by a plaintiff who planned to provide financial services to marijuana-related businesses, in probable violation of federal law. Though Judge Bacharach wrote for himself, no Judge on the panel disagreed with his statutory interpretation, and the district judge had reached a similar conclusion. *See Fourth Corner Credit Union v. Fed. Reserve Bank Kan. City*, 154 F. Supp. 3d 1185, 1188–89 (D. Colo. 2016).

in the face of Congress's unambiguous command to make services in the fee schedule available to nonmember depository institutions."[7] *Id.* at 1069–70 (citation omitted).

*Second*, the alleged "policy concerns" of the Board—which has no legal authority to direct the daily operations of FRBNY, *see Fox News Network, LLC v. Bd. Governors Fed. Reserve Sys.*, 601 F.3d 158, 161 (2d Cir. 2010)—are both baseless and irrelevant to TNB's statutory rights. Tellingly, FRBNY makes little effort to describe those concerns apart from innuendo and citations to two "market commentators" (Letter at 2–3 & n.1)—ignoring the many others who recognize that "the Fed should welcome banks like TNB".[8] And there is ample basis for that conclusion: Banks like TNB operate in other countries today without incident,[9] and FRBNY all but admits that it currently operates two similar facilities of its own. (*See* Letter at 3 (citing Compl. ¶¶ 109, 114, 116).) FRBNY's attempt to contrive a policy debate is a distraction.

*Third*, FRBNY's request for agency deference (*see id.*) is specious. That argument, too, was rejected by Judge Bacharach and fails here for many independently sufficient reasons, including (for example) that FRBNY (the only defendant) is not entitled to agency deference because it is not a federal agency. *See Fox News*, 601 F.3d at 161. FRBNY's litigation position, moreover, cannot trump either the plain meaning of the FRA, *see Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984), or the consistently stated policy of the Board and FRBNY, *see Fourth Corner*, 861 F.3d at 1070–72 (Bacharach, J.) ("Even now, the Board [ ] continues to announce on its website that the [FRA as amended] gives '***all*** depository institutions access to the Federal Reserve's payment services.'") (citation omitted). Simply put, FRBNY is in no position to substitute its judgment for that of Congress.

*Fourth*, TNB has standing, and its claim is ripe. FRBNY has had **more than a year** to consider TNB's request—when approval is mandatory and should have taken mere days. The notion that more time is needed because TNB's request is "still under review" (Letter at 1) is a transparent effort to evade judicial oversight. This is not about contingent or hypothetical events; TNB's business is simple, the FRA's statutory mandate is certain, and FRBNY's refusal to act is ongoing. *See Nat'l Org. Marriage, Inc. v. Walsh*, 714 F.3d 682, 691 (2d Cir. 2013) (dispute is ripe if it "primarily presents legal questions and there is a concrete dispute between the parties") (citation and internal formatting omitted). Moreover, TNB has suffered injury and will experience hardship from further delay: most obviously, TNB cannot operate without a Master Account, despite having invested substantial resources to start its business and to obtain a temporary CoA, which will expire in a matter of months. Those costs are real and continuing. There can be no question, then, that this case is ripe as both a constitutional and prudential

---

[7] Academic experts agree. For example, Peter Conti-Brown, a legal and business ethics professor at the Wharton School of the University of Pennsylvania, is "not convinced that the Fed has the legal authority to deny TNB its master account." Michael S. Derby, *Bank Suit Could Complicate the Fed's Rate Policy*, Wall St. J. (Sept. 26, 2018), https://www.wsj.com/articles/bank-suit-could-complicate-the-feds-rate-policy-1537968600.

[8] Michael S. Derby, *Bank Sues Fed, Seeking Account*, Wall St. J., Sept. 6, 2018 (quoting Andrew Levin, "a former top Fed staffer and currently a Dartmouth [ ] economic professor"); *see also, e.g.*, Editorial Bd., *Narrow Odds for Narrow Banks*, Wall St. J., Sept. 13, 2018 ("TNB's business model poses no threat to the financial system . . . that we can see."); Cochrane, *Fed Nixes Narrow Bank* (describing TNB as "an obvious boon to financial stability and efficiency"), https://johnhcochrane.blogspot.com/2018/09/fed-nixes-narrow-bank.html.

[9] *See, e.g.*, Safe Deposit Bank of Norway, https://www.sdbn.com/ (last visited Oct. 19, 2018).

matter. *See id.* at 688–91 (dispute is ripe if plaintiff has suffered an "injury in fact" and will suffer "hardship" if judicial consideration withheld).

We look forward to the opportunity to present these arguments more fully to the Court.

Respectfully submitted,

Thomas E.L. Dewey

cc: Counsel of Record (via ECF)