UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                              :
TNB USA INC.,                                            :

                 Plaintiff,                         :

      - against -                              :     Civ. No. 18 Civ. 7978 (ALC)

FEDERAL RESERVE BANK OF NEW YORK,  :

                 Defendant.                   :

------------------------------------------------------------X

# REPLY IN FURTHER SUPPORT OF
# DEFENDANT FEDERAL RESERVE BANK OF NEW YORK'S MOTION TO DISMISS

Michele Kalstein
Michael M. Brennan
Federal Reserve Bank of New York
33 Liberty Street
New York, New York 10045
*Counsel for Defendant*
*Federal Reserve Bank of New York*

## TABLE OF CONTENTS

                                                                                         **Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I.      TNB LACKS STANDING TO MAINTAIN THIS ACTION ................................. 2

II.     TNB'S CLAIM IS CONSTITUTIONALLY AND
         PRUDENTIALLY UNRIPE ................................................................................... 3

III.    THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION
         OVER TNB'S CLAIM BECAUSE IT IS CONTRARY TO
         THE PUBLIC INTEREST ...................................................................................... 5

IV.    THE FRA DOES NOT ENTITLE TNB TO A MASTER ACCOUNT .................... 5

         A.     The Opening of Master Accounts Is Discretionary
               Under FRA Section 13 ................................................................................ 5

         B.     FRA Section 11A Is Irrelevant to TNB's Claim ......................................... 6

         C.     TNB's Reading of Section 11A Creates an
               Impermissible Conflict within the FRA ..................................................... 9

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                                                                                            Page(s)

*Amico v. New Castle County*, 553 F. Supp. 738 (D. Del. 1982) ............................................ 3

*Committee for Full Employment v. Blumenthal*, 606 F.2d 1062 (D.C. Cir. 1979) ................ 3

*Dorsett v. County of Nassau*, 732 F.3d 157 (2d Cir. 2013) .................................................... 3

*Eccles v. Peoples Bank of Lakewood Vill., Cal.*, 333 U.S. 426 (1948) .................................. 5

*Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530 (1st Cir. 1995) ...................... 4

*Farmers' & Merchants' Bank of Monroe, N.C. v. Fed. Reserve
  Bank of Richmond, VA*, 262 U.S. 649 (1923) .................................................................. 6, 7

*Fourth Corner Credit Union v. Fed. Reserve Bank of Kansas City*,
  861 F.3d 1052 (10th Cir. 2017) ..................................................................................... *passim*

*Granata v. Berson*, No. 11 Civ. 689 (KBF) (KNF),
  2011 WL 6034366 (S.D.N.Y. Dec. 5, 2011) ...................................................................... 3

*Groome Res. Ltd. L.L.C. v. Parish of Jefferson*, 234 F.3d 192 (5th Cir. 2000) .................... 3

*In re Idaho Conservation League*, 811 F.3d 502 (D.C. Cir. 2016) ........................................ 3

*Liberty Cable Co., Inc. v. City of N.Y.*, 893 F. Supp. 191 (S.D.N.Y. 1995) .......................... 4

*Merrill v. Fed. Open Market Comm. of the Fed. Reserve Sys.*,
  516 F. Supp. 1028 (D.D.C. 1981) ...................................................................................... 10

*New York Bankers Ass'n v. City of N.Y.*, No. 13 Civ. 7212 (KPF),
  2014 WL 4435427 (S.D.N.Y. Sept. 9, 2014) ...................................................................... 5

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) .................................................................. 3

*Sayles Hydro Assocs. v. Maughan*, 985 F.2d 451 (9th Cir. 1993) ..................................... 4-5

*U.S. v. Sabhnani*, 599 F.3d 215 (2d Cir. 2010) ...................................................................... 8

*Williams v. U.S.*, 289 U.S. 553 (1933) .................................................................................... 8

**Statutes**

12 U.S.C. § 248a(a) ............................................................................................................7

12 U.S.C. § 248a(b) ........................................................................................................7-8

12 U.S.C. § 248a(c) .........................................................................................................7, 9

12 U.S.C. § 342 .................................................................................................................6

Monetary Control Act of 1980, Pub. L. 96-221, 94 Stat. 132 (1980) ..................................7

**Regulations**

12 C.F.R. §208.3(b)(4) .......................................................................................................9

**Other Authorities**

Federal Reserve Bank of New York Operating Circular No. 4 (Nov. 11, 1914),
  *available at* https://fraser.stlouisfed.org/files/docs/historical/ny%20circulars/
  1914_00004.pdf ...........................................................................................................7-8

## PRELIMINARY STATEMENT

To support its premature demand for a master account, TNB[1] relies largely on hyperbole and rhetoric, claiming that the New York Fed thinks it "answers to no one" and is "collud[ing]" with the Board of Governors to "put TNB out of business" for unspecified reasons. Aside from being wholly unfounded, these conspiratorial contentions are irrelevant to the motion before the Court. Nor do the numerous newly minted "facts" TNB improperly alleges for the first time in its brief save the Complaint. Even accepting them as true, they lend no support whatsoever to TNB's claim. While TNB may be frustrated that its account application has not yet been decided, TNB should not be permitted to circumvent the FRA and short circuit the Federal Reserve's consideration of the impact TNB's business model could have on the central bank's implementation of its monetary policy and financial stability mandates.

*First*, TNB has no answer to the fact that it lacks standing and its claim is constitutionally and prudentially unripe because its account application remains under review. TNB's speculation that the New York Fed has already decided to deny its application is both insufficient to avoid dismissal and contradicted by the Board of Governors' current solicitation of feedback on its concerns about entities like TNB. Moreover, because TNB cannot identify an account application deadline, it cannot establish injury due to any purported delay as a matter of law.

*Second*, TNB fails to provide a reason why the Court should not exercise its broad discretion under the DJA to decline jurisdiction because the relief TNB seeks is contrary to the public interest. TNB contends that there is no authority to dismiss on these grounds, but this Court, applying Supreme Court precedent, has done exactly that. Congress entrusted the Federal Reserve with safeguarding the nation's economy. The Court should not cut short the Federal

---

[1] Defined terms have the meanings ascribed in the New York Fed's moving brief ("Br.").

Reserve's actions in furtherance of that mission to serve TNB's pecuniary interest.

*Third*, TNB cannot escape the fact that its claimed right to a master account is foreclosed by FRA Section 13, which gives Federal Reserve Banks discretion to reject deposits in stating that Reserve Banks "*may* receive" them, rather than "shall receive" them.  TNB's strained attempt to cabin that discretion to the *types* of assets Reserve Banks may receive as deposits is unsupported by Section 13's text and the Supreme Court decision interpreting it.  Given Section 13's resolution of the issue, TNB's efforts to identify a right to an account in FRA Section 11A necessarily fail as a matter of law and logic.  Regardless, even if Section 11A ordinarily gave a right to master accounts, it would not require opening one here, where doing so could conflict with the Federal Reserve's ability to effectively use IOER—a key policy tool authorized by Congress during the financial crisis to help the central bank fulfill its statutory mandates.

## ARGUMENT

### I.     TNB LACKS STANDING TO MAINTAIN THIS ACTION

TNB concedes that its account application has not been denied, *see* TNB Opposition ("Opp.") at 22-23, which means that it has not suffered an injury and thus lacks standing.  Br. at 10-11.  TNB's contention that the New York Fed's purported "refus[al] to honor its statutory obligation" to open an account is somehow "justiciable to the same degree as a party's affirmative denial of a statutory right," Opp. at 22-23, fails both factually and legally.

TNB's bald assertion that the New York Fed has simply "refused" to act on its application is both unsupported by the facts alleged and contradicted by the Board of Governors' policy concerns about TNB's business model, Compl. ¶ 69; Br. at 11, as detailed in the recently issued ANPR soliciting public comment on those concerns.  Br. at 7-9.  While TNB self-servingly speculates that the New York Fed has "already decided" to "deny TNB's account,"

2

Opp. at 21, the only plausible inference is that no such decision has been made. Br. at 10-11.[2]

Moreover, under the case law in this Circuit, a defendant's purported delay in fulfilling a statutory or contractual obligation constitutes injury in fact only where the defendant fails to act *by an established deadline*—otherwise there is no basis to conclude any delay has occurred. *Compare Dorsett v. County of Nassau*, 732 F.3d 157, 161 (2d Cir. 2013) (no "concrete injury giving Plaintiffs standing" where, *inter alia*, "Plaintiffs had no right to have [defendant act] by a date certain") *with Robidoux v. Celani*, 987 F.2d 931, 938 (2d Cir. 1993) (injury established where "delay" ran "beyond the period provided by federal law for the processing of [plaintiff's] application").[3] Because neither the FRA nor its implementing regulations set forth any deadline for account application reviews, TNB cannot satisfy its burden to plead injury as a matter of law.

## II.   TNB'S CLAIM IS CONSTITUTIONALLY AND PRUDENTIALLY UNRIPE

The hypothetical nature of TNB's asserted injury also renders TNB's claim both constitutionally and prudentially unripe. Br. at 11-13. TNB does not contest that the applicable legal analysis for constitutional ripeness is "coterminous with the standing analysis" above, *id.* at 11-12, which requires dismissal. While TNB suggests that *Amico v. New Castle County*, 553 F. Supp. 738, 741-43 (D. Del. 1982), supports a contrary conclusion, Opp. at 21, this Court has

---

[2] To supplement its deficient allegations, TNB selectively quotes from a letter the New York Fed sent to TNB in May 2018. Opp. at 21. Having failed to reference this letter in its Complaint, TNB cannot do so now. *Granata v. Berson*, No. 11 Civ. 689 (KBF) (KNF), 2011 WL 6034366, at *4 (S.D.N.Y. Dec. 5, 2011). Regardless, TNB is wrong that the letter shows a decision had been made to deny TNB's application because the letter *expressly states* that the New York Fed has "not yet reached a conclusion as to whether TNB is eligible for a master account."

[3] The out-of-circuit cases cited by TNB, Opp. at 21, 23, are either fully consistent with this rule, *Comm. for Full Employment v. Blumenthal*, 606 F.2d 1062, 1065 (D.C. Cir. 1979) (standing found in context of violated "procedural right" to "prompt investigation"); *Groome Res. Ltd. L.L.C. v. Parish of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000) (delay constituted denial where application had been pending over 80 days past "target [completion] date"), or support the inapposite proposition that an injury may arise in extreme cases where there has been a failure to act for decades, *In re Idaho Conservation League*, 811 F.3d 502, 506, 508-09 (D.C. Cir. 2016) (standing where EPA had not complied with 30-year old command to promulgate rules).

already recognized that *Amico* is "inapplicable" where, as here, "it simply cannot be said that" the "den[ial]" of a pending application will occur with certainty. *Liberty Cable Co., Inc. v. City of N.Y.*, 893 F. Supp. 191, 205 n.27 (S.D.N.Y. 1995).[4]

Nor is this case prudentially ripe, because TNB cannot show its claim is fit for review *and* that it is suffering hardship. Br. at 12-13. Notably, TNB ignores the cases demonstrating its claim is unfit for review because its application is still pending. *Id.* at 12. Instead, TNB insists review is appropriate because this dispute raises only a legal question that would not benefit from further factual development. Opp. at 22. But as Judge Matheson noted in *Fourth Corner*, when a Reserve Bank has not acted on an account application and "may [still] issue a master account . . . there [is] no dispute and a decision . . . would be only advisory" and "premature." *Fourth Corner Credit Union v. Fed. Reserve Bank of Kansas City*, 861 F.3d 1052, 1060 (10th Cir. 2017) (op. of Matheson, J.). The assertion "that disputes which turn on purely legal questions are always ripe for judicial review is a myth." *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 537 (1st Cir. 1995). "Federal courts cannot—and should not—spend their scarce resources on what amounts to shadow boxing." *Id.*

As to hardship, TNB points only to the account application "process." Opp. at 22. But all applicants must go through that process and, as noted above, it is not constrained by any deadline, notwithstanding TNB's unsupported assertion that the process should have taken "mere days." *Id.* at 21.[5] TNB's reliance on an out-of-circuit decision finding that a *13-year* application process constituted hardship is misplaced. Opp. at 22 (citing *Sayles Hydro Assocs.*, 985 F.2d at

---

[4] TNB also cites as support *Groome Residential Ltd., L.L.C.* and *Sayles Hydro Associates v. Maughan*, 985 F.2d 451 (9th Cir. 1993), Opp. at 21, but those cases do not concern constitutional ripeness and are otherwise inapposite, as explained *supra* at 3 n.3 and *infra* at 4-5, respectively.

[5] TNB provides no response to the fact that the form it cites for this proposition does not establish any timeframe in which a decision must be rendered. Br. at 11 n.6.

453-54). That situation does not remotely resemble the process here, where TNB submitted its application in April 2018, Compl. ¶ 77, and then filed the Complaint just four months later.

### III. THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER TNB'S CLAIM BECAUSE IT IS CONTRARY TO THE PUBLIC INTEREST

The Court should exercise its broad discretion under the DJA to decline jurisdiction because the Complaint seeks to cut off the Federal Reserve's consideration of the impact that PTIEs like TNB could have on its fulfillment of its policy mandates, and is thus contrary to the public interest. Br. at 13-14. TNB's claim that the New York Fed "gives no relevant authority for this theory," Opp. at 23, ignores that the New York Fed cited the Supreme Court's decision in *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426 (1948), as direct support. Br. at 13.[6]

As this Court has recognized, *Eccles* commands that DJA jurisdiction only be "exercised in the public interest" and that dismissal is warranted where, as here, an "'alleged injury [is] based on speculation as to conduct which may or may not occur'" and "'governmental action is involved.'" *New York Bankers Ass'n v. City of N.Y.*, No. 13 Civ. 7212 (KPF), 2014 WL 4435427, at *13 (S.D.N.Y. Sept. 9, 2014) (citations omitted). TNB suggests the Court must apply a two-factor test in exercising its discretion, Opp. at 23, but no such test was applied in *New York Bankers*, nor do the DJA or *Eccles* suggest that any specific factors must be applied.

### IV. THE FRA DOES NOT ENTITLE TNB TO A MASTER ACCOUNT

#### A. The Opening of Master Accounts Is Discretionary Under FRA Section 13

Dismissal is also required because FRA Section 13 gives Federal Reserve Banks discretion to reject deposits from a given depository institution. Br. at 15-17. TNB's contrary position rests entirely on its assertion that Section 13 gives Federal Reserve Banks only "discretion to decide which types of deposits to receive." Opp. at 18. But the provision's use of

---

[6] The district and appellate court decisions in *Fourth Corner* did not address the issue of DJA discretion at all and thus are not "compelling precedent" as TNB contends. Opp. at 23.

the permissive phrase "may receive" plainly gives *both* kinds of discretion.  Section 13 expressly states that Federal Reserve Banks "may receive from any . . . depository institution[] . . . deposits," and specifies that those deposits may be "of" five listed asset types "or [any] other items."  12 U.S.C. § 342; Br. at 6 n.3 (quoting full provision).  On its face this language clearly gives Federal Reserve Banks discretion over whether to accept deposits at all from a given depository institution and also to decide what types of deposits to accept.

While TNB tries to read the former discretion out of the FRA, logic dictates that if Federal Reserve Banks "may receive" any type of "item[]" as a deposit from a depository institution—which TNB acknowledges—then Federal Reserve Banks necessarily have the discretion *not* to receive any such "items" at all from an institution.  Notably, TNB does not, because it cannot, present any substantive analysis of Section 13's text.  Instead, TNB simply quotes Judge Bacharach's erroneous—and similarly unsupported—conclusion that "Section 13 does no more than list 'the types of monetary instruments that Federal Reserve Banks may receive for deposit.'"  Opp. at 18; *see also Fourth Corner*, 861 F.3d at 1074.[7]  But the fact that a single judge in another circuit misread Section 13 in an opinion without precedential value, *see* Br. at 22-23, is not a reason for this Court to ignore the provision's clear language.

### B. FRA Section 11A Is Irrelevant to TNB's Claim

TNB asserts that FRA Section 11A—which concerns the Board of Governors' issuance of a fee schedule for "covered services" that Federal Reserve Banks provide to eligible depository institutions—entitles it to a master account.  Opp. at 14-17.  But as the New York Fed detailed, Br. at 18-23, TNB is wrong to claim such a right simply because a "principle" on which

---

[7] TNB is wrong that the Supreme Court also reached this conclusion in *Farmers & Merchants Bank of Monroe, N.C. v. Fed. Reserve Bank of Richmond*, *VA*, 262 U.S. 649 (1923), when it held that Section 13 did not impose any "obligation" on Federal Reserve Banks "to receive checks for collection."  Opp. at 18.  Nothing in that decision suggests the Supreme Court's reading of Section 13 as discretionary is limited to "checks" or any other type of deposits.

the schedule is "based" is that "[a]ll" services covered by the schedule "shall be available to nonmember depository institutions" and priced at the same fee schedule applicable to member banks. Opp. at 14-15 (citing 12 U.S.C. § 248a(a), (c)); *see also* 12 U.S.C. § 248a(b) ("covered services" include seven listed services and any "new services" the Federal Reserve System offers). That language would entitle TNB to a master account only if: (i) Section 13 did *not* give Reserve Banks discretion over deposits; (ii) a master account were a "new service" under Section 11A (because it is not a listed "service"); and (iii) it commanded Federal Reserve Banks to provide that "new service" to *all* nonmember depository institutions. TNB cannot establish any of these propositions, let alone all three of them.

*First*, as detailed above, the plain language of Section 13 expressly gives Federal Reserve Banks discretion to reject deposits from a given institution. *Supra* at 5-6; Br. at 15-17. This alone defeats TNB's assertion that Section 11A—which was appended to the FRA nearly 70 years after Section 13 was codified and almost 60 years after the Supreme Court interpreted Section 13 as discretionary in *Farmers & Merchants*—somehow indirectly overrode Section 13's discretion. *See* Br. at 16-17 (in amending FRA without modifying Section 13's phrase "may receive," Congress ratified Supreme Court's reading of that language as discretionary).

*Second*, a deposit account is plainly not a "new service" under Section 11A. Federal Reserve Bank deposit accounts have been available to eligible depository institutions *since 1914* when Reserve Banks came into existence. *See* Federal Reserve Bank of New York Operating Circular No. 4 (Nov. 11, 1914) (New York Fed prepared to receive account deposits), *available at* https://fraser.stlouisfed.org/files/docs/historical/ny%20circulars/1914_00004.pdf. Had deposit accounts been considered a "covered service" when Section 11A was enacted as part of the MCA in 1980, they would have been included in the expressly enumerated "services" list. 12

U.S.C. § 248a(b).  That they were not so included shows that Congress did not consider them a "covered service," much less a potential "new service" that might be offered in the future.[8]

*Third*, TNB is incorrect that Section 11A contains a command that Federal Reserve Banks do anything at all, let alone that they open accounts for *all* nonmember depository institutions.  Br. at 18-21.  TNB has no plausible response to the fact that Section 11A creates no such obligation because it is directed to the powers and duties of the *Board of Governors* and directs only the Board of Governors to take certain actions.  *Id*. at 18-19.  While TNB is correct that Section 11A "refers" to "Federal Reserve bank services," Opp. at 15 n.21, that passive reference does not instruct Federal Reserve Banks to take any action.  Nor can TNB otherwise explain why a command for Federal Reserve Banks to accept deposits would be buried in an FRA section directed to the Board of Governors when Section 13 expressly speaks to the "duties" of Federal Reserve Banks as to their receipt of deposits.  Br. at 15.

Equally misplaced is TNB's contention that the phrase "all Federal Reserve Bank services shall be available to nonmember depository institutions" means that "covered services" must be provided to *all* such institutions.  Opp. at 15.  Critically, the word "all" is used to modify "services" and *not* "nonmember depository institutions," which the Court must presume was intentional.  *See U.S. v. Sabhnani*, 599 F.3d 215, 245 (2d Cir. 2010) ("We decline [defendant's] invitation to read words into the statute that are not there."); *Williams v. U.S.*, 289 U.S. 553, 572 (1933) ("The use of the word 'all' in some cases, and its omission in others, cannot be regarded

---

[8] TNB suggests that master accounts are a "new service" because "all services offered by the Federal Reserve System . . . are conditioned on the issuance of master accounts."  Opp. at 16 (citing *Fourth Corner*, 861 F.3d at 1068-69 (op. of Bacharach, J.)).  Even if that were true, TNB's unsupported circular reasoning and related tennis and driving analogies, Opp. at 2, 16, do not alter the fact that deposit accounts logically would have been listed as a "covered service" in Section 11A had Congress viewed them as such.  Moreover, TNB is wrong that master accounts are the sole gateway to services.  Opp. at 13.  Depository institutions without master accounts can access most services through third-party correspondents.  OC 1, ¶¶ 2.1, 2.2(j), 2.7, 2.8.

as accidental"). Before the MCA, "covered services" were available only to eligible member banks, and this language made clear that going forward such services would also be available to eligible nonmembers. Br. at 20-21.[9] In misinterpreting Section 11A, Judge Bacharach did not consider this natural reading of its language or the foregoing authority. *See* 861 F.3d at 1069-70.

*Finally*, TNB has no response to the fact that its interpretation of Section 11A would lead to patently absurd results. Section 11A is silent on the availability of Federal Reserve Bank services for *member* banks, yet TNB asks the Court to find that that it gives all *nonmembers* a statutory right to such services. *Id.* at 21; *see also* 12 U.S.C § 248a(c)(2). TNB's misreading ignores that Congress could not have intended such an inequitable result, particularly in a statute meant to establish equity between member and nonmember depository institutions. *See* Br. at 21; Opp. at 2 (MCA meant to "level the field" between members and nonmembers).[10]

### C. TNB's Reading of Section 11A Creates an Impermissible Conflict within the FRA

Even if Section 11A did speak to opening master accounts, it would not require opening one for TNB here, where doing so could conflict with the Federal Reserve's ability to carry out the FRA's policy mandates. Br. at 23-25. TNB's primary response is to wrongly claim that Section 11A is somehow itself a policy mandate, Opp. at 19, notwithstanding that it concerns only an administrative fee schedule and says nothing about monetary policy or financial stability. *See* Br. at 4-6. TNB also tries to downplay this conflict by asserting that the Federal Reserve's policy concerns about PTIEs like TNB are "obviously hyperbole" and "irrelevant." Opp. at 24.

---

[9] The New York Fed's and Board of Governors' past statements noting that services are available to "all depository institutions," Opp. at 15-16, similarly conveyed that "covered services" would be available to all types of eligible depository institutions.

[10] Notably, membership in the Federal Reserve System can be denied if an applicant's "corporate powers" are not "consistent with the purposes of the Federal Reserve Act." 12 C.F.R. §208.3(b)(4). TNB's assertion that it is only seeking to be treated on par with state member banks thus rings hollow because not only does TNB claim a statutory right that member banks do not have, but it also seeks to insulate its business model from the scrutiny that members face.

9

But the Federal Reserve alone is charged with carrying out the FRA's policy directives; its concerns cannot be supplanted by private parties like TNB (or the blog writers it cites, *e.g.*, Opp. at 1 n.1) that have not been tasked by Congress with implementing the statute. *See Merrill v. Fed. Open Market Comm. of the Fed. Reserve Sys.*, 516 F. Supp. 1028, 1033-34 (D.D.C. 1981) (plaintiff's disagreement with Federal Reserve policy concerns was "dispute . . . over economic theory and monetary policy and . . . therefore not an appropriate subject for this Court's determination"). It is therefore TNB's self-serving characterizations—not the Board of Governors' concerns—that are irrelevant to the account application process. *Id.* at 1032 & n.11.

TNB is also incorrect that the New York Fed is improperly "collud[ing]" with the Board of Governors by taking its concerns into account. Opp. at 3. The Board of Governors and Federal Reserve Banks are part of the *same central bank*; the former is the federal agency that sets policy and the latter are instrumentalities that implement it. Br. at 3-6. There is nothing remotely improper about the New York Fed considering the Board of Governors' views here—indeed, it would be anomalous for the New York Fed *not* to consider those views.[11]

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint.

Dated:   April 12, 2019

>                                                      Respectfully Submitted,
>
>                                                      /s/ Michele Kalstein
>                                                      Michele Kalstein
>                                                      Michael M. Brennan
>                                                      Federal Reserve Bank of New York
>                                                      33 Liberty Street
>                                                      New York, New York 10045

---

[11] TNB is also wrong to allege for the first time in its brief that "a financial institution very similar to TNB" has a master account. Opp. at 24. Unlike TNB that entity, Reserve Trust, does not arbitrage the IOER rate or otherwise interfere with the FRA's policy mandates. *See* https://www.reservetrust.com/blog/ (Reserve Trust provides "escrow-based deposit accounts and serv[es] as a trust intermediary to [its] business clients to streamline their payment processes.").